JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

**CASE NO.:** CV 07-07274 SJO (SHx)    **DATE:** August 8, 2012

**TITLE:** Barbara A. Phipps v. John E. Potter, et al.

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz                              Not Present
Courtroom Clerk                               Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**            **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                   Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL** [Docket No. 184]

This matter comes before the Court on Plaintiff Barbara Phipps's ("Plaintiff") Motion for New Trial or, in the Alternative, to Alter or Amend Judgment ("Motion") filed on May 16, 2012. Defendant Postmaster General John E. Potter ("Defendant") filed his Opposition ("Opposition") on June 15, 2012, to which Plaintiff replied on June 29, 2012 ("Reply"). For the following reasons, the Court **DENIES** Plaintiff's Motion.

I.   FACTUAL AND PROCEDURAL HISTORY

In July 2006, Plaintiff, a rural mail-carrier for the United States Postal Service ("Postal Service") at the Ojai Post Office, injured her left arm at work. (Opp'n 1-2, June 15, 2012, ECF No. 188.) Plaintiff's doctor advised her to perform only "light duty" tasks and to work within her medical limitations, which included a driving restriction and five-pound weight lifting limit. (Opp'n 2.) The Postal Service informed Plaintiff that it was unable to accommodate her work restrictions. (Opp'n 1-2.) Plaintiff sued, alleging that her former employer violated her rights pursuant to the Rehabilitation Act, 29 U.S.C. § 791, *et seq.* (Opp'n 1; *see* Mot. 1, May 16, 2012, ECF No. 184.) The case went to trial in November 2011. (Mot. 1.)

Several witnesses were called at trial, including Divina Villegas, Defendant's Manager of Health and Resource Management and chair of the Sierra Costal District Reasonable Accommodation Committee ("DRAC") (Mot. 3); Plaintiff's physician, Dr. Ali Berenji; the DRAC Postal Service physician, Dr. Michael Randall (Mot. 10); Plaintiff's supervisor, Clayton Reed Jenson (Mot. 9); the Ojai Postmaster Richard Garcia (Mot. 9, 13); and George E. Lukas (Mot. 4, 11-12).

Prior to jury deliberations, the Court instructed the jury to consider only evidence received at trial. (Mot. 5.) During deliberations, the jury inquired, "Should the loss of wages for the prolonged period (11 months?) and associated effects of, [sic] be considered in this case or was this covered and settled in a separate disability claim case. [sic]" (Mot. 6.) The Court responded, "You should

CASE NO.: **CV 07-07274 SJO (SHx)**              DATE: **August 8, 2012**

consider the total lost wages and benefits, minus the total amount received from worker's compensation." (Mot. 6.)

On November 21, 2011, the jury found in favor of Defendant, specifically finding that Plaintiff:

(1) proved by a preponderance of the evidence that she suffered a disability within the meaning of the Rehabilitation Act;
(2) did not prove by a preponderance of the evidence that she was a qualified individual within the meaning of the Rehabilitation Act;
(3) proved by a preponderance of the evidence that she was engaged in an activity protected under the Rehabilitation Act;
(4) did not prove by a preponderance of the evidence that she was subjected to an adverse employment action in retaliation for engaging in an activity protected under the Rehabilitation Act;
(5) proved by a preponderance of the evidence that she exercised a right granted or protected by the Rehabilitation Act;
(6) proved by a preponderance of the evidence that defendant engaged in acts to coerce, intimidate, threaten, or interfere with plaintiff's ability to engage in activity protected by Rehabilitation Act; and
(7) did not prove by a preponderance of the evidence that a causal link existed between her protected activity and defendant's actions.

(Mot. 1-2; *see* Opp'n 2.)

Two jurors approached Plaintiff and Plaintiff's counsel after the trial concluded and complained about jury deliberations and jury foreman Thomas Burkert. Juror Donald Mikity actively sought out Plaintiff and Plaintiff's counsel after the trial (Decls. of Donald Bandecca, Rochelle Pfluger and Donald Mikity in Supp. of Mot. ("Juror Decls.") Ex. 3 ("Mikity Decl.") ¶ 2, May 16, 2012, ECF No. 184-3), while juror Donald Bandecca encountered Plaintiff and Plaintiff's counsel at the courthouse elevator (Juror Decls. Ex. 1 ("Bandecca Decl.") ¶ 2.) Plaintiff's counsel contacted juror Rochelle Pfluger, who also complained about Burkert's statements and attitude. (*See generally* Juror Decls. Ex. 2 ("Pfluger Decl.").)

At trial, Ms. Villegas testified that DRAC conducted a search to find Plaintiff a position at another post office. (Mot. 3; *see* Mot. Ex. C, Trial Tr. vol. III, 197:11-20.) Plaintiff discussed Ms. Villegas's trial testimony with George E. Lukas, a "long-time Postal Service employee" who worked closely with Plaintiff when she tried to return to work. (Decl. of George E. Lukas and Barbara A. Phipps Ex. 3 ("Phipps Decl.") ¶¶ 2-3, May 16, 2012, ECF No. 184-2; Mot. 4.) Lukas swears in his declaration that the company fills out documentation called "work identification worksheets" whenever it conducts the type of search Ms. Villegas described in her testimony. (Lukas Decl. ¶¶ 5-6; Mot. 4.) No such documentation was provided to Plaintiff during discovery upon her requests

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JS-6

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** <u>CV 07-07274 SJO (SHx)</u> | **DATE:** <u>August 8, 2012</u> |

for production of records. (Mot. 4; Decl. of Samuel F. Galici ("Galici Decl.") ¶¶ 8-11, May 16, 2012, ECF No. 184-4.)

Plaintiff asserts the following arguments in support of her Motion: (1) Ms. Villegas knowingly provided false testimony when she stated that DRAC searched for a replacement job within a fifty-mile radius, and Plaintiff was unable to discover this information prior to trial (Mot. 2, 4); (2) the jury foreperson introduced prejudicial extraneous information into the jury deliberation room (Mot. 4); (3) the verdict is against the clear weight of the evidence as to Plaintiff's claims (Mot. 8).

Defendant argues that Plaintiff's Motion should be denied for the following reasons. First, Plaintiff's Motion is untimely because it was filed more than twenty-eight days after judgment was entered. (Opp'n 3.) Second, the jury did not consider extraneous information during deliberations because the prior disability settlement referred to in Plaintiff's Motion is Plaintiff's worker's compensation payment, and this payment was introduced at trial. (Opp'n 3.) Third, the jury's verdict is supported by the evidence presented at trial, which showed that: Plaintiff's supervisors did not subjectively intend to discriminate against her; Plaintiff's medical condition impeded her ability to perform essential job functions; and the Post Office made reasonable efforts to find an alternative position for Plaintiff. (Opp'n 4.)

II. <u>DISCUSSION</u>

    A. <u>Legal Standard</u>

The Federal Rules of Civil Procedure allow a court to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Notably, "Rule 59 does not specify the grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Rule 59 requires courts to grant or deny a motion for a new trial based on "those grounds that have been historically recognized," *id.*, including claims that the verdict is against the weight of the evidence, the awarded damages are excessive, or the trial was unfair to the moving party. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). Also, a new trial may be granted "if the verdict . . . is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski*, 481 F.3d at 729 (internal quotation marks omitted); *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999) ("[A] trial court may grant a new trial, even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice." (internal quotation marks omitted)). "[A] trial court, in assessing whether to grant a new trial, does not properly do so merely because it might have come to a different result from that reached by the jury." *Wilhelm v. Associated Container Transp. (Aust.), Ltd.*, 648 F.2d 1197, 1198 (9th Cir. 1981).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JS-6

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 07-07274 SJO (SHx)</u>            DATE: <u>August 8, 2012</u>

1. <u>Untimeliness</u>

Defendant argues that Plaintiff's Motion for New Trial should be dismissed because it was not timely filed.  (Opp'n 5.)

Rule 58 requires that "[e]very judgment and amended judgment must be set out in a separate document."  Fed. R. Civ. P. 58(a).  If this separate document is submitted, then judgment is entered into the civil docket under Rule 79. Fed. R. Civ. P. 58(c)(2).  In the event that a separate document is not submitted, judgment is automatically entered 150 days from the entry in the civil docket. Fed. R. Civ. P. 58(c)(2).  "A motion for a new trial must be filed no later than 28 days after the entry of judgment."  Fed. R. Civ. P. 59(b).

In this case, trial ended on November 21, 2011.  (Jury Verdict, ECF No. 165.)  Because no separate document for judgment was entered, judgment was automatically entered on April 19, 2012, pursuant to Rule 58(c)(2)(B).  Twenty-eight days after April 19, 2012, was May 17, 2012.  Therefore, Plaintiff had until May 17, 2012, to file her Motion.  Plaintiff filed her Motion on May 16, 2012.  Thus, Plaintiff's Motion is timely.

2. <u>False Witness Testimony</u>

Perjury is defined as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).  "[A] trial court may grant a new trial [] if the verdict is . . . based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Molski*, 481 F.3d at 729.

Plaintiff alleges that Ms. Villegas perjured herself when she testified that the DRAC conducted a search at post offices stationed within a fifty-mile radius.  (Mot. 4.)  Plaintiff argues that this information was not discoverable before or during trial.  (Mot. 4.)  In support of this allegation, Plaintiff submits the declaration of long-time Postal Service employee Mr. Lukas.  (Mot. 4.)  Mr. Lukas asserts that when the DRAC conducts the type of search Ms. Villegas described in her testimony, postmasters at each post office survey the facility and fill out "work identification worksheets" verifying that a search was conducted and providing a status of available work.  (Mot. 4; Lukas Decl. ¶¶ 5-6.)  However, Defendant never produced these "work identification worksheets" during discovery.  (Mot. 4; Galici Decl. ¶¶ 8-11.)  Plaintiff insists that Ms. Villegas's testimony is false because of the documents' absence.  (Mot. 4.)

Without mentioning or producing the "work identification worksheets" discussed by Plaintiff, Defendant argues that Ms. Villegas did not perjure herself.  (Opp'n 12-13.)  In lieu of the "work identification worksheets," Defendant proffers a DRAC letter sent to Plaintiff dated May 25, 2007, which describes Plaintiff and Defendant's meeting to discuss Plaintiff's medical restrictions.  (Opp'n 13; Ex. 550, at 2.) In the letter, the DRAC committee explained that it could not locate an

Case 2:07-cv-07274-SJO-SH   Document 191   Filed 08/08/12   Page 5 of 11   Page ID
 #:3583

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

CASE NO.: CV 07-07274 SJO (SHx)                    DATE: August 8, 2012

available position conforming to Plaintiff's work restrictions and that it rejected Plaintiff's request to have another employee deliver packages weighing more than five pounds because the request was unreasonable and inefficient. (Opp'n 13.) Defendant further argues that Plaintiff should have impeached Ms. Villegas at trial, asked additional questions during cross-examination, or called Mr. Lukas as a rebuttal witness if Plaintiff suspected Ms. Villegas had perjured herself. (Opp'n 16 n.9.)

Plaintiff's argument is unconvincing. First, it is unlikely that Plaintiff, after due diligence, would not have discovered the evidence that Plaintiff alleges indicates the falsehood of Ms. Villegas's testimony. Given Mr. Lukas's role in Plaintiff's return-to-work attempts and his long history with the Postal Service, Plaintiff's counsel should have asked him specifics about Plaintiff's case and about the proper procedures for finding injured workers alternate work. Had Plaintiff or Plaintiff's counsel asked Mr. Lukas about these matters prior to trial, it would have been apparent during trial that Ms. Villegas's testimony did not match the procedure described by Mr. Lukas. As Defendant points out in its Opposition, Plaintiff's counsel could have impeached or cross-examined Ms. Villegas during trial rather than submitting this Motion months after trial concluded and judgment was entered.

Second, Plaintiff does not provide clear evidence that Ms. Villegas's testimony was false. Plaintiff's conclusion that Ms. Villegas perjured herself because no "work identification worksheets" were submitted is logically flawed. It assumes that if no work identification worksheets were produced during discovery, then none were completed, and thus Defendant never searched for an alternate position at other post office facilities.

Plaintiff fails to provide evidence conclusively indicating that Ms. Villegas perjured herself, and the "evidence" that Plaintiff does provide should have been discovered prior to or during trial. Finally, as discussed *infra*, the jury found that Plaintiff was not a qualified individual within the meaning of the Rehabilitation Act. Even if Ms. Villegas's testimony was false, Plaintiff suffered no prejudice because the completion or failure to complete the worksheets is not probative of Plaintiff's status as a qualified individual. Accordingly, the Court finds that this argument does not warrant a new trial.

### 3. Juror Misconduct

"[A] litigant 'is entitled to a fair trial but not a perfect one.'" *Hard v. Burlington N. R.R. Co.* (*Hard II*), 870 F.2d 1454, 1460 (9th Cir. 1989) (quoting *Brown v. United States*, 411 U.S. 223, 231-32) (1973)). "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . . [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). However, a new trial is warranted if the jury used or obtained evidence not introduced at trial and there is "a reasonable possibility that the extrinsic material could have affected the verdict." *Marino v. Vasquez*, 812 F.2d 499, 504 (9th Cir. 1987). A plaintiff must show that (1) extrinsic evidence was introduced; and (2) this information had a "substantial and injurious effect or

Case 2:07-cv-07274-SJO-SH   Document 191   Filed 08/08/12   Page 6 of 11   Page ID
#:3584

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| CASE NO.: CV 07-07274 SJO (SHx) | DATE: August 8, 2012 |
|---|---|

influence in determining the jury's verdict." *See Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (internal quotation marks omitted); *see also Vasquez*, 812 F.2d at 504.

      a.    Extrinsic evidence

Extrinsic evidence is "[e]vidence not presented at trial, acquired through out-of-court experiments or otherwise." *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1991). "[A] juror may not bring into the jury room evidence developed outside the witness stand such as the results of a juror's experiment conducted while the jury was on a weekend recess, or legal research performed during the trial in an attempt to supplement inadequate instructions from the judge." *Grotemeyer v. Hickman*, 393 F.3d 871, 878 (9th Cir. 2004) (citations omitted). Typically, jurors' private knowledge gained through personal experience is not considered extrinsic evidence. *See Hard v. Burlington N. R.R.* (*Hard I*), 812 F.2d 482, 486 (9th Cir. 1987) ("Jurors must rely on their past personal experiences when hearing a trial and deliberating on a verdict."). "Where, however, those experiences are related to the litigation, . . . they constitute extraneous evidence which may be used to impeach the jury's verdict." *Id.* Jurors may not "act in any case upon particular facts material to its disposition resting in their private knowledge, but should be governed by the evidence adduced." *Head v. Hargrave*, 105 U.S. 45, 49 (1881). "[T]o act intelligently [jurors] must, judge of the weight and force of [the presented] evidence by their own general knowledge of the subject of inquiry." *Id.*

Plaintiff argues that jury foreperson Mr. Burkert introduced extrinsic evidence. (Mot. 4.) Plaintiff supports her argument with the declarations of three jurors and a question submitted by the jury to the Court. (*See* Mikity Decl. ¶¶ 4-6; Pfluger Decl. ¶ 3; Bandecca Decl. ¶ 3.) In Mr. Mikity's Declaration, he states, "Mr. Burkert said Ms. Phipps' [labor] union must have helped her. He insisted that she had received money from a separate disability claim and had already been taken care of. That is why we sent Jury Note Number 2 . . . ." (Mikity Decl. ¶ 4.) In Ms. Pfluger's Declaration, she asserts, "[Mr. Burkert] said that [Plaintiff] had received a large disability award that was not put into evidence at the trial and that she was taken care of. We considered this possibility although we did not know for sure whether she had." (Plfuger Decl. ¶ 3.) Mr. Bandecca swears in his Declaration that Mr. Burkert told the jurors that Plaintiff "had been fully compensated by a settlement of a separate disability claim" but that "[n]one of [the jurors] knew for sure whether Ms. Phipps had received money from a settlement of a separate disability claim." (Bandecca Decl. ¶ 3.)

Defendant contends that Mr. Burkert did not introduce extrinsic evidence and that the question submitted by the jury refers to the workers' compensation settlement Plaintiff received, which was introduced at trial. (Opp'n 7-12.) Defendant's argument is weak, and the Court will not theorize whether an ambiguous jury question refers to a workers' compensation settlement or any other type of settlement in assessing this issue.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

JS-6

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 07-07274 SJO (SHx)</u>       DATE: <u>August 8, 2012</u>

In determining whether an evidentiary hearing is needed to investigate potential juror misconduct, courts may only consider juror testimony in reference to "objective facts bearing on extraneous influences on the deliberation process," not "the deliberative process or subjective effects of the extraneous information." *Hard I*, 812 F.2d at 485-486; Fed. R. Evid. 606(b). Thus, the Court will only consider whether Mr. Burkert introduced extrinsic evidence. Three jurors in their declarations state that Mr. Burkert bullied them and told them that Plaintiff must have received a separate disability settlement from her union. (Mot. 5; Mikity Decl. ¶¶ 4-5; Pfluger Decl. ¶ 3; Bandecca Decl. ¶ 3.) None of the jurors state that Mr. Burkert represented to the jury that he obtained this information from an outside source; none of the jurors indicate that Mr. Burkert presented the information as anything other than his opinion. Based on the information presented, which does not allege that Mr. Burkert conducted independent research or obtained information from an outside source, the Court finds that Mr. Burkert did not introduce extrinsic evidence. Rather, he drew upon his life experiences and personal opinions when he stated that Plaintiff's union provided her with a settlement. While courts want jurors to draw upon their life experiences and use their common sense, *see Hargrave*, 105 U.S. at 49, jurors' use of their personal experiences is not unchecked. The following cases illustrate permissible and impermissible use of personal experience.

In *Grotemeyer*, the jury foreperson was trained in medicine and told the other jurors during deliberations that the defendant's crime was motivated by mental illness, that defense counsel should have pled an insanity defense, and that the defendant would receive mental health care if convicted. 393 F.3d at 878. The court stated that while the foreperson could "not bring into the jury room evidence developed outside the witness stand, such as the results of a juror's experiment conducted while the jury was on a weekend recess, or legal research performed during the trial in an attempt to supplement inadequate instructions from the judge," she could draw upon her personal experiences, which included her medical background. *Id.* at 878. Additionally, because the American legal system acknowledges that jurors bring life experiences and biases into the courtroom, counsel had the opportunity during voir dire to ask potential jurors about their careers and life experiences and use peremptory challenges if such "experience[s] would give [the jurors] excessive influence." *Id.* at 878. The court held that the foreperson's actions were permissible, and that the trial court did not abuse its discretion when it denied the defendant's motion for a new trial without an evidentiary hearing on juror misconduct. *Id.* at 878, 881.

In *Hard I*, the plaintiff sued his employer under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* 812 F.2d at 483. The plaintiff moved for a new trial after he learned that a juror and the juror's father were former employees of the defendant or the defendant's predecessor. *Id.* Three jurors submitted affidavits stating that the juror had made statements about his former employer's settlement practices. *Id.* at 483, 485. Although the Court acknowledged that jurors must use their personal experiences during deliberation, the court found that the juror's personal experience was so related to the trial that it "constitute[d] extraneous evidence which may be used to impeach the jury's verdict." *Id.* at 486. As a consequence, the court found that the district court abused its discretion when it did not hold an evidentiary hearing on juror misconduct. *Id.*

Case 2:07-cv-07274-SJO-SH   Document 191   Filed 08/08/12   Page 8 of 11   Page ID #:3586

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

CASE NO.: **CV 07-07274 SJO (SHx)**          DATE: **August 8, 2012**

The facts of *Grotemeyer*, where the court found no juror misconduct, state a stronger case for juror misconduct than the facts of this case. Here, the jurors submitted declarations that Mr. Burkert represented himself as having some knowledge of the Americans with Disabilities Act and being more intelligent and better educated than the other jurors. (Bandecca Decl. ¶ 4; *see* Mikity Decl. ¶ 10.) Unlike the foreperson in *Grotemeyer*, Mr. Burkert does not have specialized technical training that he applied to the facts of the case. Additionally, the jurors here do not state that Mr. Burkert was a part of Plaintiff's union or had first-hand knowledge of her union's worker's compensation or settlement practices. The facts of this case are markedly different from those of *Hard I*, where the juror was the defendant's former employee and had first-hand knowledge regarding procedures pertinent to the litigation.

Mr. Burkert's statements, as alleged by other jurors, that Plaintiff "had been fully compensated by a settlement of a separate disability claim" (Bandecca Decl. ¶ 3), that "Ms. Phipps' [labor] union **must have** helped her," and that she "had already been taken care of," (Mikity Decl. ¶ 4; *see also* Plfuger Decl. ¶ 3), appear to be conjectural on his part. The Court finds that Mr. Burkert permissibly drew upon his personal experiences. If Plaintiff was concerned that a juror had experience with unions or biases related to unions, then counsel should have used voir dire to ferret out these prior experiences and biases. Voir dire questioning exists to combat potential juror prejudice " and "is the proper method of uncovering prejudicial character traits of potential jurors." *Hard II*, 870 F.2d at 1461. A motion for a new trial is not.

Thus, the Court finds that Plaintiff has not established that extrinsic evidence was admitted into the jury deliberation room or that the jury foreperson improperly relied upon personal experiences that would qualify as extrinsic evidence.

### b. Substantial and Injurious Effect on the Jury's Verdict

Because Plaintiff has not demonstrated that extrinsic evidence was brought into the jury deliberation room, Plaintiff fails to meet the first part of the test for juror misconduct. The Court will not move on to the second part of the analysis, determining whether Mr. Burkert's comments, as alleged by Mr. Bandecca, Mr. Mikity, and Ms. Pfluger, had a "substantial and injurious effect" in determining the jury's verdict. *See Sassounian*, 230 F.3d at 1108. Further, the Court will not consider the subjective effect of Mr. Burkert's statements on his fellow jurors, as they are not qualified to testify about these events during deliberation. *See* Fed. R. Evid. 606(b).

The Court does not find that Plaintiff deserves a new trial because of juror misconduct. Accordingly, the Court DENIES Plaintiff's Motion.

### 4. Verdict Against the Clear Weight of the Evidence

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

## CIVIL MINUTES - GENERAL

CASE NO.: CV 07-07274 SJO (SHx)        DATE: August 8, 2012

"[I]t is for the jury to weigh the evidence and pass upon its credibility." *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246, 251 (9th Cir. 1957) (internal quotation marks omitted). However, courts may grant a motion for a new trial where "the verdict is against the weight of the evidence." *Molski*, 481 F.3d at 729.

At trial, the jury found that Plaintiff did not prove: (1) that she was a qualified individual within the meaning of the Rehabilitation Act; (2) that she was subjected to an adverse employment action in retaliation for engaging in an activity protected under the Rehabilitation Act; or (3) that a causal link existed between her protected activity and Defendant's actions. (Mot. 1-2; *see* Opp'n 2.)

Plaintiff avers that these findings were against the clear weight of the evidence and that she should be granted a new trial. (*See generally* Mot.) First, Plaintiff argues that she established at trial that she was a qualified individual under the Rehabilitation Act by proving that she could fulfill her position's essential job functions, which included driving and carrying mail with her lifting restrictions. (*See* Mot. 8-9, 12.) Second, Plaintiff argues that she established that her employer retaliated against her by showing the following retaliatory acts: Postmaster Garcia and her supervisor Mr. Jenson prevented her from notifying the Postal Service of her injury to prevent and delay worker's compensation benefits; June Montenegro did "nothing" to help Plaintiff access medical information; and Ms. Villegas and DRAC considered nonexistent medical restrictions when searching for Plaintiff's alternate position and determining how to accommodate Plaintiff's disability. (Mot. 18.) Third, Plaintiff argues that the jury could not find that Defendant engaged in acts to coerce, intimidate, threaten, or interfere with Plaintiff's ability to engage in activity protected by Rehabilitation Act without finding that a causal link existed. (Mot. 19.)

Defendant argues that evidence at trial showed that Plaintiff could not perform her job within her medical restrictions, that Defendant had no subjective intent to deprive Plaintiff of her disability benefits or prevent her from working her job, and that Defendant made reasonable efforts to secure alternate work for Plaintiff. (Mot. 4.)

The Court will assess the evidence supporting Plaintiff's claim that she was a qualified injured worker. In determining whether Plaintiff was a qualified individual, the jury used the following definition:

> [A qualified individual is a person] with a disability, who, with or without
> a reasonable accommodation, can perform the essential functions of
> the employment position that such individual holds or desires. The
> individual must satisfy the requisite skill, experience, education and
> other job-related requirements of the employment position.

(Mot. 9, Jury Instruction No. 6.)   Evidence at trial indicated that driving was an essential function of Plaintiff's position as a rural mail carrier (*see* Mot. 9-10; *see also* Mot. Ex. A, Trial Tr. vol. I, 82:9-12, May 16, 2012, ECF No. 184-5), and according to the testimony by Mr. Garcia and Plaintiff's

Case 2:07-cv-07274-SJO-SH   Document 191   Filed 08/08/12   Page 10 of 11   Page ID #:3588

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

CASE NO.: CV 07-07274 SJO (SHx)                    DATE: August 8, 2012

supervisor Mr. Jenson, Plaintiff could not drive after she was injured on July 6, 2006 (Mot. 9). Additionally, a medical report dated January 29, 2007, and written by Plaintiff's physician Dr. Berenji, indicated that Plaintiff was restricted from using her left hand while driving because of the stress of repetitive motion. (Mot. 10; *see* Opp'n Exs. 55-28, June 15, 2012, ECF No. 188-4.) According to the letter from DRAC to Plaintiff, Dr. Berenji left a voicemail message for DRAC physician Dr. Randall on March 29, 2007, stating that Plaintiff's driving and lifting limitations are permanent. (Mot. Ex. 550, at 1, May 16, 2012, ECF No. 184-17).

Plaintiff argues that no medical evidence corroborates Mr. Jenson's and Mr. Garcia's testimony and that the only medical evidence indicating Plaintiff could not drive using both arms was a single report written by Dr. Berenji. (Mot. 9-10.) As such, the jury should have found that she was a qualified injured worker. (Mot. 8.)

Plaintiff attempts to argue that because Defendant's evidence is insufficient to prove that she could not perform her essential duty of driving her vehicle, she could drive and the jury should have found that she was a qualified individual under the Rehabilitation Act. However, Defendant did not bear the burden of proof; Plaintiff bore that burden, and Plaintiff failed to carry it. Plaintiff offered no medical evidence proving that she could drive. If Plaintiff disagreed with Dr. Berenji's diagnosis, then she could have contacted another physician and undergone an exam to determine the extent of her permanent disability. Based on the medical evidence presented, it was reasonable for the jury to find that Plaintiff could not drive using her left arm.

Additionally, Plaintiff argues now, as she did at trial, that she did not need her left arm to drive and the jury should not have found that she could not drive. (Mot. 9-11.) However, testimony at trial that indicated that DRAC denied Plaintiff's request to drive using only one hand because Plaintiff, as a rural mail carrier driving at higher rates of speed, was at greater risk of losing control of her vehicle. (Opp'n Ex. 2, Trial Tr. vol. III, 233:19 - 234:3, June 15, 2012, ECF No. 188-2.) Thus, the jury reasonably found that Plaintiff could not fulfill an essential job duty and was justified in finding that Plaintiff did not carry her burden at trial.

In order to prevail, Plaintiff had to prove each element of her claim. Because the Court finds that the jury's finding that Plaintiff failed to establish that she was a qualified injured worker under the Rehabilitation Act was not against the weight of the evidence, the Court need not address Plaintiff's remaining arguments.

Accordingly, Plaintiff's argument that the verdict was against the weight of the evidence fails and the Court **DENIES** Plaintiff's Motion.

III.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for a New Trial.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

JS-6

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 07-07274 SJO (SHx)</u>          **DATE:** <u>August 8, 2012</u>

IT IS SO ORDERED.